
FILED
2012 Apr-16  AM 10:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LORETTA STEPHENSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | **2:10-cv-0881-AKK** |
| **NATIONAL ALLIANCE** | ) | |
| **SECURITY AGENCY, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is Defendant National Alliance Security Agency, Inc.'s ("NASA") motion for partial summary judgment.  Doc. 41.  In her First Amended Complaint, Plaintiff Loretta Stephenson ("Stephenson") alleged (I) discrimination under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112, (II) unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and (III) retaliatory discharge under the FLSA.  Doc. 9.  NASA moved for summary judgment on the ADA and FLSA retaliatory discharge claims. *See* doc. 41.  For the reasons stated more fully herein, the court **GRANTS** the motion as it relates to the ADA claim and **DENIES** the motion as it relates to the FLSA claim.

A Pretrial Conference will be held in the Chambers of the Undersigned on **May 31, 2012 at 9:00 A.M. at the Hugo L. Black U.S. Courthouse in**

**Birmingham, Alabama**. This case is set for jury trial on **July 9, 2012 at 9:00 A.M. at the Hugo L. Black U.S. Courthouse in Birmingham, Alabama**.

## I.     STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the

evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.  FACTUAL AND PROCEDURAL HISTORY

This action arises from Stephenson's former employment with NASA. *See* doc. 9. In January 2008, NASA contracted with the Housing Authority of the Birmingham District ("HABD") to provide security services to the Birmingham Collegeville Housing Community ("Collegeville"). Doc. 43-5. The contract required NASA to provide security officers for all Collegeville entrances and to patrol the inside perimeter. *Id.* The entrance duties included "monitoring ingress and egress traffic, both pedestrian and vehicular, for twenty-four (24) hours daily, seven days a week. It is mandatory that the stations be continuously staffed at all times . . . . Relief officers must be provided for both expected and unexpected periods of illness, vacation, meals, breaks, and other absences." *Id.* at 1.

Ronald Lee Thompson ("Thompson"), NASA's regional manager, hired Stephenson as a night supervisor on April 24, 2009, at a rate of $6.75 an hour, which NASA increased subsequently to $7.25. Doc. 43-10, at 7, 12; doc. 43-12, at 1. At her initial interview, Stephenson informed Thompson that her son, Wendell Slaughter, suffered from lupus, doc. 43-10, at 9-10; doc. 43-12, at 1, and that she needed to take him to the doctor periodically. Stephenson received some form of the NASA employee manual when she started her employment. *Id.* at 13-14. As it relates to absenteeism and tardiness, NASA produced its employee manual purportedly in place during Stephenson's tenure, which stated that "[b]eing absent or tardy without notification will result in an unexcused absence or tardy. Excused absences or tardy must have supervisor approval and proper notification . . . . Excessive absenteeism or tardiness, either excused or unexcused, is a serious problem and will result in disciplinary action, to include possible termination." Doc. 43-6, at 7. *See also* doc. 43-11, at 7. Although Stephenson denies receiving this particular employee manual, she admits that NASA had a policy of absenteeism and tardiness which required employees to "report to work either ten minutes before your shift time to make sure that you are properly dressed, ready and prompt to go to work." Doc. 43-10, at 13. Stephenson also states that NASA employees "had to call at least thirty minutes before your shift time to the supervisor that's on duty, let them know if you're going to be late or let them know if you're not going to be able to come in that night." *Id.*

Stephenson admits arriving late for work four times due to hospital visits

with her son, doc. 45, at 4; doc. 43-10, at 13, but maintains that she never arrived more than ten minutes after her shift started, doc. 45, at 4. In fact, Stephenson received no disciplinary actions for tardiness or for any other reason while employed with NASA. *Id.* On May 24, 2009, one month after her hire, Stephenson requested and received a leave of absence because of an alleged assault and hospitalization of her son. Doc. 43-10, at 19; doc. 43-12, at 1. Stephenson continued to work periodically after her request for leave and, indeed, the parties agree that Thompson reduced Stephenson's scheduled hours to allow Stephenson to care for her son. Doc. 43-10, at 25. The parties dispute, however, the hours Stephenson worked after May 24, 2009, with Stephenson claiming she worked approximately 88 hours in June and July of 2009 for which she received no compensation. *See* doc. 43-10, at 23-25; 43-12, at 2.

In addition to requesting a leave of absence on May 24, 2009, allegedly, Stephenson also complained to Thompson about unpaid hours and overtime wages. Doc. 43-10, at 22. Although Thompson denies that Stephenson made these complaints, doc. 43-12, at 2, Stephenson testified that Thompson admitted to NASA owing her unpaid wages, doc. 43-10, at 22. NASA contends that after reviewing the "payroll records and time sheets regarding Ms. Stephenson's employment . . . [t]he time sheets show that she worked 148 hours total. The payroll records show that she was paid for 148 hours." Doc. 43-4, at 1. Moreover, Stephenson states that, in August 2009, she contacted Terry Young, NASA's home office manager, doc. 43-11, at 3, about unpaid overtime hours, that Young

allegedly told her to have Thompson submit a letter to the corporate office about these hours, and that, even though Stephenson relayed these instructions to Thompson, Thompson failed to submit such a letter. Doc. 43-10, at 12.

On August 4, 2009, Stephenson returned to work and met with Thompson to discuss her future employment. *Id.* at 21-22. The parties disagree as to what transpired at this meeting. Stephenson asserts that she returned at that time because she would no longer have "a problem missing work due to [her] son." Doc. 45, at 4. Thompson alleges that Stephenson "wanted to work as a supervisor for $8.00 per hour. NASA agreed that she could return to work as a guard. NASA did not want her to work as a supervisor because of her absences from work . . . . The pay rate was the same for guards and supervisors, and NASA did not pay anyone $8.00 per hour, whether supervisor or guard, at [] Collegeville . . . ." Doc. 43-12, at 1. Stephenson, however, maintains that at this meeting Thompson showed her an email from Deborah Young, the President of NASA, *see* doc. 43-4, stating that NASA neglected to properly pay Stephenson because Young "felt like [Stephenson] had threatened [Young] by asking her for [] overtime pay, that [Young] no longer needed a night supervisor." Doc. 43-10, at 29. Stephenson refutes that she demanded $8.00 per hour and claims that she "wanted to keep [her] job, even working as a security guard rather than a supervisor at a lower rate of pay than I was told I would get when I was hired." Doc. 45, at 5.

Additionally, Stephenson testified that on August 4, 2009, when she returned to NASA's office, "an employee named Daily radioed to other employees

at the work site that I had arrived . . . . Daily then told me that fellow employee Patterson had left because he did not want to work with me." Doc. 45, at 4. Thompson purportedly informed Stephenson that "Mr. Patterson felt kind of threatened because he, he thought that my son had tuberculosis." Doc. 43-10, at 27. That same day, Stephenson worked the 3 p.m. to 11 p.m. shift, and Thompson supposedly promised to call Stephenson after he re-worked the employee schedule. Doc. 45, at 5. Thompson never called Stephenson. *Id.*

One week later, on August 11, 2009, Stephenson called Thompson inquiring about the re-worked schedule. Doc. 43-10, at 30. Allegedly, Thompson discharged Stephenson during this phone conversation, stating that Young, NASA's President, felt threatened by her demands for unpaid hours. *Id.* at 30-31. Conversely, however, Thompson denies any knowledge of unpaid hours and provides that he never discharged Stephenson, rather, Stephenson "quit because she was not going to get paid the $8.0[0] per hour that she wanted." Doc. 43-12, at 2. Young also denies discharging Stephenson. Doc. 43-11, at 6.

On August 12, 2009, Stephenson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. 43-1. The EEOC issued a Right to Sue letter on April 5, 2010, doc. 43-2, and Stephenson filed her original complaint on April 7, 2010. Doc. 1. Stephenson filed an Amended Complaint on June 21, 2010, doc. 9, and NASA moved for partial summary judgment on October 31, 2011, doc. 41. This motion is fully briefed, docs. 44, 46, and ripe for adjudication.

### III. ANALYSIS

NASA moves for summary judgment on Stephenson's ADA and FLSA retaliatory discharge claims. Doc. 41, at 2. The court addresses each in turn.

A.   ADA

Stephenson alleges that NASA terminated her because of her son's disability. *See* doc. 9, at 6. The ADA, as amended in 2009, generally provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privilege of employment." 42 U.S.C. § 12112(a). One type of prohibited disability discrimination is "associated discrimination," defined as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). *See also Hilburn v. Murata Electronics N. Am.*, 181 F.3d 1220, 1230-31 (11th Cir. 1999).

Where, as here, a plaintiff cannot demonstrate direct evidence of associated disability discrimination, she may utilize the *McDonnell Douglas* burden-shifting analysis to demonstrate discrimination through circumstantial evidence. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). *See e.g.*, *Hilburn*, 181 F.3d at 1230-31. Under this framework, plaintiff has "the initial

burden of establishing a *prima facie* case of disability discrimination." *Cleveland*, 369 F.3d at 1193. Once plaintiff puts forth a *prima facie* case, a presumption of discrimination is established, and the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for [the] termination." *Id.* The employer "simply ha[s] the burden of production, and [need] not . . . persuade the court that it was motivated by the reason." *Id.* (citing *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001)). "After the articulated reason [is] given, the inferential presumption [i]s eliminated, the *McDonnell Douglas* framework disappear[s], and [plaintiff is] left with the ultimate burden of proving that [the employer] intentionally discriminated against her because of her disability." *Id.* (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000)). Accordingly, to prove intentional discrimination, plaintiff must show that the employer's proffered nondiscriminatory justification for the adverse employment action is "'unworthy of credence,'" *id.* (quoting *Reeves*, 530 U.S. at 142-43), and "merely a pretext to mask discriminatory actions." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009).

A *prima facie* case of "associated discrimination" under the ADA, *see* 42 U.S.C. § 12112(b)(4), requires Stephenson to establish the following elements: "(1) she was subject to an adverse employment action, (2) she was qualified for the job at that time, (3) she was known by [NASA] at the time to have a relative with a disability, and (4) the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative

was a determining factor in [NASA's] decision." *Hilburn*, 181 F.3d at 1230-31. NASA contends that Stephenson fails to demonstrate a *prima facie* case because she was not qualified for the job and no reasonable inference exists that her son's disability played a determining factor in the purported adverse employment action. Doc. 42, at 11-18.

Taken in the light most favorably to Stephenson, NASA subjected her to an adverse employment action by discharging her on August 11, 2009. Doc. 43-10, at 30. *See Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998) (listing involuntary termination as an adverse employment action). However, NASA maintains that Stephenson's excessive absences and tardiness made her unqualified for employment. The Eleventh Circuit "has followed a line of cases which holds that a non-disabled employee who violates a neutral employer policy concerning attendance or tardiness may be dismissed even if the reason for the absence or tardiness is to care for the employee's disabled associate because the failure of the employee to comply with the attendance requirements of her job renders her not qualified for purposes of establishing a *prima facie* case of associated discrimination." *Sanford v. Slade's Country Stores, LLC*, 709 F. Supp. 2d 1232, 1239-40 (M.D. Ala. 2010) (citing *Hilburn*, 181 F.3d at 1230-31). Indeed, *Hilburn* recognizes the difference between an employer making the unfounded assumption that an employee who has an association with a disabled person will miss work to care for that person, and the termination of a non-disabled employee who violates a neutral employment attendance policy, "'even if

the reason for the absence or tardiness is to care for the [disabled associate].'" 181 F.3d at 1231 (quoting *Hartog v. Wasatch Academy*, 129 F.3d 1076, 1083 (10th Cir. 1997) (alteration in original)).  *See also Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing H.R.Rep. No. 101-485, pt. 2, at 61-62 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 343-44).  Accordingly, attendance is a valid job requirement, and an employer is under no obligation to eliminate its attendance requirement as a reasonable accommodation under the ADA.  *Sanford*, 709 F. Supp. 2d at 1240; *Stansberry*, 651 F.3d at 486.

NASA maintains that Stephenson's substantial absenteeism in May, June, and July 2009 and her occasional tardiness to work demonstrate that she is unqualified for the position.  Doc. 42, at 15; *see also* doc. 43-10, at 23-28.  Stephenson, on the other hand, argues that NASA granted leave for these absences.  Doc. 43-10, at 19; doc. 43-12, at 1.  Moreover, Stephenson testified that when she returned on August 4, 2009, her son's disability no longer required absences from work.  Doc. 45, at 34.  Generally, "if the nature of an employee's position requires her to regularly and reliably attend work, and she fails to meet that requirement, then she is not qualified for her job."  *Rocky v. Columbia Lawnwood Reg'l Med. Cent.*, 54 F. Supp. 2d 1159, 1166-67 (S.D. Fla. 1999).  Conversely, here, the court refuses to find Stephenson "unqualified" due to excessive absences when her employer explicitly allowed these "absences."  In other words, taking all inferences in the light most favorable to Stephenson, by granting a leave of absence, NASA essentially excused Stephenson from regularly

attending work in May, June, and July 2009.

However, despite arguably possessing proper qualifications, Stephenson fails to sufficiently demonstrate the fourth *prima facie* element of an associated discrimination claim—i.e., that "the adverse employment action occurred under circumstances which raise[] a reasonable inference that the disability of the relative was a determining factor in [NASA's] decision." *Hilburn*, 181 F.3d at 1230-31. *See also Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) ("The ADA places the burden on the employee to establish a *prima facie* case of disability discrimination."). While Stephenson never addresses this element head-on, *see* doc. 44, at 15 n.5, she states that "[i]t was only after another employee complained to Thompson about working with Stephenson after having apparently confused lupus with tuberculosis that NASA" purportedly discharged her. *Id.* at 14. In other words, Stephenson asks the court to infer that NASA terminated her because of co-employees' comments regarding her son's disability. This court cannot do so because statements by co-employees Daily and Patterson, *see* doc. 43-10, at 27; doc. 45, at 4, fail to generate a reasonable inference that *the employer*, NASA, considered Stephenson's son's disability when allegedly discharging her, s*ee* doc. 43-10, at 9-10; doc. 43-12, at 1. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1329 (11th Cir. 1998) (holding non-decisionmaker's stray comment that "older people have more go wrong" insufficient for a reasonable fact finder to "conclude that the employer intended to discriminate on the basis of age"); *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir.

1997) (finding that a non-decisionmaker's discriminatory comments cannot satisfy plaintiff's burden to show discriminatory animus).

Without anything more in the record, Stephenson apparently relies on a temporal proximity argument to establish an inference of discrimination. *See* doc. 44, at 14. To raise an inference that an employer terminated an employee because of a protected disability, the Eleventh Circuit instructs that "mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (discussing the *prima facie* case for retaliation under Title VII). *See also Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1020 (8th Cir. 2005) ("[C]lose temporal proximity between an employer's *discovery* of a protected characteristic and an adverse employment action may, on rare occasions, suffice to create an inference of discrimination.") (emphasis added). However, a "three to four month disparity between the statutorily protected expression and the adverse employment activity is not enough." *Thomas*, 506 F.3d at 1364. Here, Stephenson informed Thompson of her son's disability during her initial interview on April 24, 2009, and accordingly, NASA had full knowledge of her son's disability when it hired Stephenson. Thereafter, Thompson purportedly discharged Stephenson on August 11, 2009—a span of over three months—because of this same disability. This previous knowledge substantially undercuts the already weak inference that NASA discharged Stephenson because of the disability.

Indeed, as it relates to an inference of causation, the court finds the Sixth

Circuit's *Stansberry* decision instructive. In *Stansberry*, plaintiff claimed that his former employer discharged him "based on . . . unfounded fears that his wife's illness might cause him to be inattentive or distracted in the future." 651 F.3d at 488. Plaintiff argued that, for the fourth *prima facie* element of his associated discrimination claim, the court should "infer that he was terminated on account of his wife's disability because he was discharged shortly after her condition worsened." *Id*. The court disagreed and held that "[b]ecause Air Wisconsin knew of [plaintiff's wife's] disability for a long period of time, this undercuts the inference that [plaintiff's] termination was based on unfounded fears that his wife's disability might cause him to be inattentive at work." *Id*. Thus, *Stansberry* illustrates why Stephenson's temporal proximity argument falls short—i.e., NASA hired, employed, granted leave, and allowed Stephenson to return to work with knowledge of her son's disability, *see* doc. 43-10, at 9-10, 19; doc. 45, at 5; as such, assuming NASA subsequently discharged Stephenson—a fact NASA disputes, the court cannot reasonably infer, without some other evidence, that NASA based this discharge on Stephenson's association with her disabled son.

Stephenson must establish a *prima facie* case of discrimination to survive summary judgment, and stated simply, no reasonable jury could conclude that NASA discharged Stephenson because of her son's disability. Absent any evidence that "the adverse employment action occurred under circumstances which raise[] a reasonable inference that the disability of the relative was a determining factor in [NASA's] decision," *Hilburn*, 181 F.3d at 1231, the court

**GRANTS** NASA's summary judgment motion on the ADA claim.

B.     *FLSA - Retaliatory Discharge*

"The FLSA protects persons against retaliation for asserting their rights under the statute." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000) (citing 29 U.S.C. § 215(a)(3)). Similar to ADA discrimination claims, where a plaintiff cannot demonstrate direct evidence of retaliation under the FLSA, she may utilize the *McDonnell Douglas* burden shifting framework. *Raspanti v. Four Amigos Travel, Inc.*, 226 F. App'x 820, 822 (11th Cir. 2008). In other words, "the plaintiff must first establish a *prima facie* case of retaliation. The employer then must articulate a legitimate nonretaliatory reason for the adverse employment action. If the employer meets this burden of production, then the plaintiff must establish that the proffered reason is pretextual." *Id.* (citing *Wolf*, 200 F.3d at 1342-43). To establish a *prima facie* case for retaliation under the FLSA, a plaintiff must demonstrate that "'(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" *Wolf*, 200 F.3d at 1342-43 (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997) (alteration in original)). And, the Eleventh Circuit mandates a "but for" standard for the causal connection element. *Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995).

Stephenson establishes a *prima facie* case for retaliatory discharge under the FLSA. First, as it relates to protected activity, Stephenson testified that she

complained to Thompson in May 2009 regarding unpaid overtime hours, and Thompson purportedly replied "I understand that you have worked those hours . . . . I will get in touch with the corporate office and let them know that you need to be paid your overtime." Doc. 43-10, at 22. Stephenson also maintains that she complained to Thompson on August 4, 2009 regarding unpaid overtime wages. *Id.* at 30. Stephenson additionally contends that she complained to Terry Young, NASA's corporate office manager, stating that she "called Terry and was asking him about my overtime pay and my hours that I had worked and I wasn't paid for. He told me that Ronald [Thompson] would have to submit a letter to the corporate office in order for me to be paid my overtime pay and the days that I wasn't paid for." Thompson allegedly failed to submit this letter to NASA's corporate office. *Id.* at 12. NASA offers no objection that these complaints are protected under the FLSA, and indeed, the Supreme Court recently provided that "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011).

Second, taking all inferences in favor of Stephenson, NASA discharged her. NASA argues that Stephenson suffered no adverse employment action because she "subjectively construed her employment status to be that she was discharged when

in fact she wanted to be paid a rate that no one at NASA was paid." Doc. 42, at 22 (citing doc. 43-12, at 2). However, NASA's contention fails to take the evidence in the light most favorable to Stephenson, who testified that Thompson explicitly discharged her on August 11, 2009. Doc. 43-10, at 30. Where, as here, the parties produce conflicting testimony regarding Stephenson's departure from NASA, the law dictates that the court view the evidence in the light most favorable to the non-movant. *See Ellis*, 432 F.3d at 1325. Therefore, while Stephenson must ultimately prove at trial that NASA terminated her employment, for purposes of summary judgment, her testimony establishes the *prima facie* element of an adverse employment action.

 Finally, the court finds a causal connection between Stephenson's protected expressions and the alleged adverse employment action. Similar to establishing a *prima facie* case for retaliation under the ADA, an FLSA retaliation "plaintiff satisfies the causal-connection element if he provides sufficient evidence of a close temporal proximity between the employer's awareness of the protected conduct and the adverse employment action." *Hill v. Manning*, 236 F. Supp. 2d 1292, 1300 (M.D. Ala. 2002) (citing *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (discussing retaliatory discharge under the ADA)). Stephenson testified that she complained to both Thompson and Terry Young regarding unpaid overtime wages in early August 2009, and NASA purportedly discharged her on August 11, 2009. Doc. 43-10, at 12, 30. This temporal proximity sufficiently satisfies Stephenson's *prima facie* burden for the

causal connection element.  *See Thomas*, 506 F.3d at 1364.

Therefore, under the *McDonnell Douglas* framework, the burden shifts to NASA to assert a legitimate reason for the adverse action.  *Wolf*, 200 F.3d at 1343. While NASA continuously maintains that it never discharged Stephenson, it also provides, for summary judgment purposes, that Stephenson's demand for wage increases, admitted tardiness, and excessive absences serve as legitimate reasons for the challenged employment action.  *See* doc. 42, at 23; doc. 46, at 8; *see also* doc. 43-10, at 13, 19, 23-25; doc. 43-12, at 1; doc. 45, at 4.  These reasons satisfy NASA's burden which "is a burden of production, not persuasion," and NASA "need only produce evidence that could allow a rational fact finder to conclude that [Stephenson's] discharge was not made for a" retaliatory reason.  *Standard*, 161 F.3d at 1331 (addressing the *McDonnell Douglas* framework in a Title VII retaliatory discharge setting).  Accordingly, the burden again shifts to Stephenson to demonstrate that NASA's stated reasons are pretext to mask retaliatory animus. *See Raspanti*, 226 F. App'x at 822 (citing *Wolf*, 200 F.3d at 1343).

For a pretext analysis, the "court must, considering all the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quoting *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).  Moreover, "'[t]he district court must evaluate whether the plaintiff

has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Stephenson first argues that NASA's primary contention—it *never* discharged Stephenson—demonstrates pretext because NASA now inconsistently asserts reasons *for* discharging Stephenson. Doc. 44, at 19. The court disagrees because, under the *McDonnell Douglas* framework, an employer may dispute the *prima facie* elements of a retaliation claim, but subsequently assume the veracity of the *prima facie* case, at the summary judgment phase, to reach the issue of retaliatory animus. *See E.E.O.C. v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 149-50 (7th Cir. 1996). However, this analysis is not dispositive because Stephenson points to other evidence of pretext in the record that precludes summary judgment. Stephenson testified that when Thompson discharged her, he provided an email where Deborah Young "said that she no longer needed my service and that I was fired because she felt like I had threatened her by asking her for my overtime pay." Doc. 43-10, at 30. This statement reveals an inference of retaliatory animus and also reveals inconsistencies in the asserted justifications for Stephenson's termination. As such, Young's purported statements, combined with the temporal proximity of Stephenson's complaints to Thompson and her alleged termination, produce a jury question regarding whether NASA discharged Stephenson because she engaged in protected FLSA activities. While a jury must

first find that NASA, in fact, terminated Stephenson, assuming such a finding, a reasonable jury could also determine that Stephenson's complaints about unpaid wages and overtime hours served as a motivating factor in her termination. Therefore, the court **DENIES** NASA's motion for summary judgment on the FLSA retaliatory discharge claim.

## IV.   CONCLUSION

Stephenson's claims for (I) unpaid wages and (II) retaliatory discharge under the FLSA may proceed to trial by jury.  *See* doc. 9, at 7-10.

**DONE** this 16th day of April, 2012.

                                                                           _____
                                                                           ABDUL K. KALLON
                                                                           UNITED STATES DISTRICT JUDGE